*Daniel J. Porter, District Attorney, Stephen A. Fern, Assistant District Attorney*, for appellee.

### A11A1688. LUANGKHOT v. THE STATE.
### A11A2146. SALEUMSY v. THE STATE.
### A11A2281. PHOMMACHANH v. THE STATE.
(722 SE2d 193)

MILLER, Judge.

Khamone Luangkhot, Isaac Saleumsy, and Santisouk Phomm-achanh (collectively, "Defendants"), along with approximately 35 defendants, were charged in multiple indictments arising out of a single investigation involving charges of trafficking in ecstasy, conspiracy to traffic in ecstasy, and conspiracy to possess ecstasy with intent to distribute.[1] Each Defendant filed a motion to suppress the evidence obtained from intercepted telephone conversations resulting from a series of wiretap warrants, extensions, and amendments. Among other grounds, the motions challenged the validity of the wiretap warrants on the basis that the trial court lacked jurisdiction to issue them. The trial court denied Defendants' motions, finding that Gwinnett County was the proper jurisdiction and venue for the crimes being investigated, thereby authorizing Gwinnett County Superior Court judges to issue the foregoing wiretaps under Georgia's wiretap statute, OCGA § 16-11-64.

This Court granted Defendants' applications for interlocutory appeal and subsequently consolidated the three appeals. On appeal, Defendants seek reversal of the trial court's orders denying their motions to suppress, contending that the wiretap warrants, extensions, and amendments were not authorized under Georgia's wiretap statute. We disagree.

> While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's appli-

---

[1] Specifically, Luangkhot was indicted with six counts of trafficking in ecstasy (OCGA § 16-13-31.1) and one count of conspiracy to possess ecstasy with intent to distribute (OCGA §§ 16-13-30 (b), 16-13-33). Saleumsy was indicted with one count of trafficking in ecstasy (OCGA § 16-13-31.1) and one count of conspiracy to possess ecstasy with intent to distribute (OCGA §§ 16-13-30 (b), 16-13-33). Phommachanh was indicted with one count of conspiracy to traffic in ecstasy (OCGA §§ 16-4-8, 16-13-31.1), one count of trafficking in ecstasy (OCGA § 16-13-31.1), and one count of possession of a sawed-off rifle (OCGA § 16-11-123).

cation of the law to undisputed facts is subject to de novo appellate review.

(Citations and punctuation omitted.) *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). Because the parties do not dispute the facts relevant to the motions to suppress, we will conduct a de novo review of the trial court's rulings on Defendants' motions to suppress.

The record shows that in early 2007, state and federal officers assigned to the Atlanta High Intensity Drug Trafficking Area task force ("Atlanta HIDTA") received information from a confidential informant regarding an ecstasy distribution ring operating in and around Gwinnett County. Based on phone number information provided by the informants, recordings of phone calls between the informants and the targeted suspects, as well as surveillance of several controlled buys of ecstasy from the targeted suspects in Gwinnett County, the Gwinnett County District Attorney obtained a series of 25 investigative warrants, extensions, and amendments from Gwinnett County Superior Court judges authorizing wiretaps of numerous telephone lines. Because Atlanta HIDTA was conducting the investigation, the monitoring station was located at the Atlanta HIDTA office in Fulton County. The actual interceptions occurred in the "wire room" of the Atlanta HIDTA office. The warrants, extensions, and amendments resulted in the interception of a number of Defendants' communications, all of which they subsequently moved to suppress.

On appeal, Defendants do not dispute that the Gwinnett County Superior Court judges had both subject matter jurisdiction and venue over the crimes for which they were indicted. Rather, Defendants contend that the wiretap warrants, extensions, and amendments in this case were not authorized under the state wiretap statute, because both the listening post and the physical location of the intercepted phones were located outside Gwinnett County. The State, on the other hand, contends that the state wiretap statute authorized the Gwinnett County Superior Court judges to order the wire intercepts because they had jurisdiction over the crimes being investigated. We agree with the State.

Georgia's wiretap statute provides, in relevant part, that

[u]pon written application, under oath, of the prosecuting attorney having jurisdiction over prosecution of the crime under investigation, or the Attorney General, made before a judge of superior court, said court may issue an investigation warrant permitting the use of such device, as defined in Code Section 16-11-60, for the surveillance of such person

or place to the extent the same is consistent with and subject to the terms, conditions, and procedures provided for by Chapter 119 of Title 18 of the United States Code Annotated, as amended.

OCGA § 16-11-64 (c). It is well established that "[w]iretapping and surveillance are the subjects of federal and state law[.]" (Citation, punctuation and footnote omitted.) *North v. State*, 250 Ga. App. 622, 623 (1) (552 SE2d 554) (2001). Accordingly, "[f]or evidence obtained through state-authorized wiretaps to be admissible in a state criminal proceeding, it must have been obtained in a manner not inconsistent with the requirements of *both* the federal and state laws." (Citation, punctuation and footnote omitted.) Id. Moreover, "Georgia law must meet the minimum standards of federal law in protecting privacy but may impose more stringent requirements" otherwise. (Citation, punctuation and footnote omitted.) Id.

Defendants' interpretation of OCGA § 16-11-64 (c) relies primarily upon the federal wiretap statute, 18 USC § 2518 (1), (3), which provides that "a judge of competent jurisdiction . . . may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire, oral, or electronic communications *within the territorial jurisdiction of the court in which the judge is sitting*[.]" (Punctuation omitted; emphasis supplied.) According to Defendants, the language of 18 USC § 2518 (3) imposes a "territorial jurisdiction" upon Georgia superior court judges that is limited to the county in which the judge sits, and that therefore the Gwinnett County Superior Court judges in this case could not issue wiretap warrants for interceptions occurring beyond the bounds of Gwinnett County.[2] Defendants' reliance upon federal authority in this particular instance, however, is misplaced. Significantly, the "territorial jurisdiction" language of 18 USC § 2518 (3) relates to that of federal court judges issuing wiretap warrants pursuant to the federal wiretap statute — not to state court judges issuing wiretap warrants pursuant to a state wiretap statute. To that end, "it is clear that Congress intended that state law would define the 'territorial jurisdiction' of each state court." (Footnote omitted.) *Adams v.*

---

[2] Where "interceptions" are deemed to occur varies by jurisdiction. In *Evans v. State*, 252 Ga. 312, 318-319 (1) (314 SE2d 421) (1984), our Supreme Court endorsed a more limited view of "interception" as the location of the listening post. We nevertheless note that *Evans* was based on a previous version of the Georgia wiretap statute that is no longer in effect. For purposes of this appeal, however, we need not address whether the current version of the Georgia wiretap statute might adopt a more expansive interpretation of "interception," as the State concedes that no interceptions occurred in Gwinnett County.

*Lankford*, 788 F2d 1493, 1500 (B) (11th Cir. 1986).[3] The Eleventh Circuit in *Adams* reasoned that the flexibility built into 18 USC § 2518 (3) "implicitly delegate[d] to the states the job of defining the territorial parameters of [such] section." (Punctuation omitted.) Id. at 1499 (B).

Thus, we turn to the language of OCGA § 16-11-64 (c), rather than the federal statute, to determine the scope of an issuing superior court judge's territorial jurisdiction. We believe the legislative history of OCGA § 16-11-64 (c) is illustrative on this point. The pre-2000 version of Georgia's wiretap statute included a territorial restriction that authorized

> upon written application, under oath, of the district attorney of the circuit wherein the device is to be physically placed, or the Attorney General, . . . *any judge of the superior court of the circuit aforesaid* may issue an investigation warrant permitting the use of [the interception] devices . . . .

(Punctuation omitted; emphasis supplied.) OCGA § 16-11-64 (b) (1) (1999). This territorial restriction, however, was eliminated in 2000, at which time the General Assembly amended the wiretap statute so that it provided, in relevant part, that

> upon written application, under oath, of the district attorney having jurisdiction over the prosecution of such crime, or the Attorney General, . . . *any judge of the superior court having jurisdiction of such crime* may issue an investigation warrant permitting the use of [the interception] devices . . . .

(Punctuation omitted; emphasis supplied.) OCGA § 16-11-64 (b) (1) (2000); see also Ga. L. 2000, p. 491, § 2. The wiretap statute was last amended in 2002, and currently provides an issuing superior court judge with a more expansive jurisdictional authority — that is,

> [u]pon written application, under oath, of the prosecuting attorney having jurisdiction over prosecution of the crime under investigation, or the Attorney General, made before *a*

---

[3] "By contrast, Congress did define which types of state courts could properly issue wiretap orders, i.e., a 'judge of competent jurisdiction,' defined in 18 USC § 2510 (9) (b) as any court of general criminal jurisdiction authorized by state statute to authorize wiretaps." (Punctuation omitted.) *Adams*, supra, 788 F2d at 1499 (B), n. 12. With respect to the federal courts, however, a judge of competent jurisdiction means "a judge of a United States district court or a United States court of appeals[.]" (Punctuation omitted.) 18 USC § 2510 (9) (a).

> *judge of superior court*, said court may issue an investigation warrant permitting the use of such [interception] device . . . .

(Punctuation omitted; emphasis supplied.) OCGA § 16-11-64 (c) (2002); see also Ga. L. 2002, p. 1432, § 3.

Despite the changes OCGA § 16-11-64 (c) has undergone, Defendants nevertheless rely upon the Supreme Court of Georgia's *Evans* case, which was decided when the pre-2000 version of the wiretap statute was in effect. Defendants specifically point to the *Evans* language providing "that the jurisdictional provision of the federal law, 18 USCA § 2518 (3), confers jurisdiction on a superior court judge to authorize interception (aural acquisition) of wire communications within his territorial jurisdiction." (Punctuation omitted.) *Evans v. State*, 252 Ga. 312, 317 (1) (314 SE2d 421) (1984). In light of the subsequent statutory amendments that have broadened the scope of a superior court judge's territorial jurisdiction, however, this ruling in *Evans* is no longer controlling.

Currently, the plain language of the wiretap statute places a territorial limitation only upon the prosecuting attorney who applies for the warrant, i.e., "the prosecuting attorney having jurisdiction over prosecution of the crime under investigation[.]" OCGA § 16-11-64 (c). The statute otherwise requires only that the wiretap warrant be issued by "a judge of superior court[.]" OCGA § 16-11-64 (c). Thus, given the plain language and legislative history of our state's wiretap statute,[4] combined with Congress' intent for the states to define "territorial jurisdiction," we hold that OCGA § 16-11-64 (c) authorized Gwinnett County Superior Court judges, who had jurisdiction over the crimes being investigated, to issue wiretap warrants for interceptions occurring outside of Gwinnett County.[5]

Defendants further assert that such an interpretation of OCGA

---

[4] "We interpret a statute to give effect to the legislative intent; 'in all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy.' " (Punctuation omitted.) *Fairwell v. State*, 311 Ga. App. 834, 843 (4) (b) (717 SE2d 332) (2011) (citing OCGA § 1-3-1 (a)). By amending the statute to remove the prior language imposing a territorial limitation and to instead require only that the wiretap warrant be issued by "a judge of superior court," the General Assembly appears to have intended to expand the jurisdiction of a superior court judge's authority to issue warrants under OCGA § 16-11-64 (c).

[5] Defendant Luangkhot's reliance upon *Davis v. State*, 21 A3d 181 (Md. Ct. Spec. App. 2011), cert. granted, 421 Md. 557 (2011), is unavailing. The court in *Davis* addressed a "liberalizing" amendment to Maryland's state wiretap statute that specifically addressed the interception of mobile telephone communications. See *Davis*, supra, 21 A3d at 190-192 ("Particularly in view of the increasing usage of cell phones and with a further appreciation of the statewide anti-crime responsibilities of the Attorney General and the State Prosecutor, . . . the purpose of the . . . amendment was to broaden the authority of a judge to order an intercept

§ 16-11-64 (c) is unconstitutional, citing concerns with their individual privacy rights. As an initial matter, the Supreme Court of Georgia has exclusive appellate jurisdiction over all cases involving the constitutionality of a statute. Ga. Const. of 1983, Art. VI, Sec. VI, Par. II. In order to invoke that jurisdiction, however, the record must show that the trial court specifically passed on the constitutional issue. *City of Decatur v. DeKalb County*, 284 Ga. 434, 436 (1) (668 SE2d 247) (2008). Here, the record fails to show that the trial court directly ruled upon the question of whether enforcement of the wiretap warrants, extensions, and amendments violated the Defendants' privacy rights. Cf. id. Therefore, Defendants' constitutional challenge has not been preserved for appellate review, the Supreme "Court's exclusive appellate jurisdiction of constitutional issues was not invoked and the appeal properly was filed in the Court of Appeals." Id.[6]

Finally, we note that our holding today serves the goals of the state wiretap statute. Significantly, it allows the same court, rather than multiple courts, to preside over cases that involve criminal enterprises spanning multiple jurisdictions. Defendants' interpretation of OCGA § 16-11-64 (c), on the other hand, which would strictly ground a superior court judge's jurisdiction to the county in which the listening post or intercepted phones are located, would have the effect of fragmenting the investigative efforts for drug trafficking cases, such as this one, which involve activities expanding throughout the state, among a variety of prosecutors and courts. We find no indication that the General Assembly intended to require such fragmentation of a multi-jurisdictional drug investigation.

In sum, we hold that OCGA § 16-11-64 (c) authorized the Gwinnett County Superior Court judges to issue the 25 wiretap warrants, extensions, and amendments in this case. Therefore, the trial court properly denied Defendants' motions to suppress the evidence obtained from these wiretaps.

---

anywhere in the State."). Significantly, "guided by the legislative history of the [Maryland] amendment," the *Davis* court held that "it [was] pellucid that [Md. Code Ann. § 10-408 (c) (3)], properly parsed, says that 'an order may authorize the interception *anywhere within the state* of communications received or sent by a communication device.' " (Punctuation omitted; emphasis supplied.) Id. at 193. The reasoning of the *Davis* court is consistent with our interpretation of OCGA § 16-11-64 (c) in this case.

[6] We nevertheless note that in *Adams*, supra, 788 F2d at 1498 (B), the Eleventh Circuit previously found "no merit in appellants' contention that because the district attorney that applied for the order and the judge that authorized the wiretap were not in the same county as some of the tapped telephones, Congress' concern for privacy was called into play." The Eleventh Circuit concluded that, given Congress' deference to state law on the definition of territorial jurisdiction, "core congressional concerns d[id] not include the matter of the Fulton County District Attorney and the Fulton County Superior Court judge authorizing a wiretap of a telephone located in a nearby county." Id. at 1499-1500 (B).

*Judgments affirmed. Ellington, C. J., and Doyle, P. J., concur.*

DECIDED JANUARY 18, 2012 — 

*K. Julie Hojnacki, Bruce S. Harvey,* for appellant (case no. A11A1688).

*Garland, Samuel & Loeb, John A. Garland,* for appellant (case no. A11A2146).

*David D. Marshall,* for appellant (case no. A11A2281).

*Daniel J. Porter, District Attorney, Rodney K. Miles, Assistant District Attorney,* for appellee.