[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15806
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-00331-TCB-LTW-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE GUADALUPE LARA,
a.k.a. Pillo,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(October 20, 2014)

Before HULL, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Jose Guadalupe Lara appeals his convictions for conspiring to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 846; and conspiring to launder money, in violation of 18 U.S.C. § 1956(h).  He is currently serving a sentence of 81 months' imprisonment.[1]  For the reasons that follow, we affirm.

## I.

The facts are not in dispute.  During a DEA investigation into a large-scale drug conspiracy, local law enforcement officers assigned to a DEA task force obtained a wiretap authorization from a DeKalb County, Georgia, Superior Court judge.  The calls were intercepted and monitored from a DEA listening post in Fulton County, Georgia.  Both counties are within the Northern District of Georgia.

About nine months after the wiretaps ended, the Georgia Supreme Court issued an opinion holding that superior court judges lacked jurisdiction to issue warrants and authorization outside their judicial circuit.  *See Luangkhot v. State*, 736 S.E. 2d 397, 401 (Ga. 2013).  Lara moved to suppress the evidence obtained and derived from the wiretaps, arguing that *Luangkhot* rendered the wiretap warrants invalid and the evidence inadmissible.

---

[1]  Lara pleaded guilty to two conspiracy offenses, retaining the right to appeal the denial of his motion to suppress.

The district court denied Lara's motion to suppress, concluding that the wiretap evidence remained admissible under federal law despite the territorial-jurisdiction violation, because the jurisdictional violation did not implicate one of Congress's core concerns in passing Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (Title III).  In the alternative, the district court concluded that the good-faith exception to the exclusionary rule would apply to the wiretap evidence and that the officers acted in good faith in light of state law that was unsettled.  This is Lara's appeal.

## II.

We review the district court's denial of a motion to suppress as a mixed question of law and fact, reviewing the facts for clear error and the application of the law to the facts *de novo*.  *United States v. Franklin*, 694 F.3d 1, 7 (11th Cir. 2012).  We review *de novo* whether the good-faith exception to the exclusionary rule applies to a search, but "the underlying facts upon which that determination is based are binding on appeal unless clearly erroneous."  *United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002) (quotation and citation omitted).  We may affirm the denial of a motion to suppress on any ground supported by the record.  *United States v. Caraballo*, 595 F.3d 1214, 1222 (11th Cir. 2010).

## III.

3

Under the provisions of Title III, evidence obtained from a wiretap is generally admissible as long as the interception of the information conforms to the requirements of Title III. *See generally* 18 U.S.C. §§ 2515, 2517(3). In addition to dictating the requirements for interception by federal authorities, Title III provides for interceptions by state authorities investigating certain crimes, including drug trafficking. *See* 18 U.S.C. § 2516(2). Under § 2516(2),

> The principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State to make application to a State court judge of competent jurisdiction for an order authorizing or approving the interception . . . , may apply to such judge for, and such judge may grant in conformity with section 2518 of this chapter and with the applicable State statute an order authorizing, or approving the interception . . . by investigative or law enforcement officers having responsibility for the investigation of the offense as to which the application is made . . . .

18 U.S.C. § 2516(2). A state court of competent jurisdiction is defined as "a judge of any court of general criminal jurisdiction of a State who is authorized by a statute of that State to enter orders authorizing interceptions of wire, oral, or electronic communications." *Id*. § 2510(9)(b). Thus, Title III delegates to the states the determination of which of its courts are empowered to issue wiretap warrants. *Adams v. Lankford*, 788 F.2d 1493, 1499-1500 (11th Cir. 1986).

In 1984, the Georgia Supreme Court held that a superior court judge had authority to authorize wiretaps only "within his territorial jurisdiction." *Evans v.*

4

*State*, 314 S.E.2d 421 (Ga. 1984).  Following the ruling in *Evans*, however, Georgia's wiretap statute was amended to read as follows:

> Upon written application, under oath, of the prosecuting attorney having jurisdiction over prosecution of the crime under investigation, or the Attorney General, made before a judge of superior court, said court may issue an investigation warrant permitting the use of such [interception] device . . . .

O.C.G.A. § 16-11-64(c) (2002); *see also Luangkhot v. State*, 722 S.E.2d 193, 196 (Ga. Ct. App. 2012).

Interpreting the amended statute, the Georgia Court of Appeals held in 2012 that the "plain language of the wiretap statute places a territorial limitation only upon the prosecuting attorney who applies for the warrant, and requires only that the warrant be issued by a superior court judge." *Luangkhot*, 722 S.E.2d at 196-97. Accordingly, wiretap warrants authorized by Gwinnett County superior court judges were valid for interceptions occurring outside of Gwinnett County.  *Id.* at 197.  This was the interpretation of the law at the time the DEA task force in Lara's case obtained the warrants at issue here.

But in January 2013, about nine months after these warrants ended, the Georgia Supreme Court reversed the Georgia Court of Appeals, concluding that the wiretap statute did not give superior court judges the authority to issue wiretap warrants for interceptions conducted outside the boundaries of their respective judicial circuits.  *See Luangkhot*, 736 S.E.2d at 398-400, 427.  The state supreme

5

court explained that a superior court's authority is generally limited to its territorial jurisdiction, which is defined as the judicial circuit in which the court sits. *Id.* at 400-01.[2]

Here, the district court concluded that the wiretap warrant in this case was invalid under Georgia law. We note that the government has not challenged the court's conclusion that the warrant was invalid under state law. The district court also concluded that under existing federal law, wiretap evidence obtained in violation of state law could still be admissible in federal court. Alternatively, the court found that, despite the state-law violation in obtaining the evidence, the evidence was admissible under the good-faith exception.

Lara argues that the good-faith exception does not apply to wiretap evidence, and even if it did, it would not apply here because the warrant at issue was facially deficient because it lacked territorial jurisdiction. Lara also contends that, in applying the exception, the district court impermissibly shifted the burden of proof onto the defense to show the exception did not apply.

We disagree. Assuming, as the district court found, that the warrants fail to comply with Georgia's territorial jurisdiction limitation, the evidence remained admissible under the good-faith exception to the exclusionary rule.

---

[2]   The Georgia legislature has since amended the statute to permit superior court judges to issue warrants throughout the state, thereby removing the jurisdictional issue. *See* O.C.G.A. § 16-11-64(c) (effective Feb. 13, 2013).

The exclusionary rule is designed to "deter future Fourth Amendment violations." *United States v. Smith*, 741 F.3d 1211, 1219 (11th Cir. 2013) (quoting *Davis v. United States*, — U.S. —, 131 S.Ct. 2419, 2426 (2011)), *petition for cert. filed*, (June 2, 2014) (No. 13-10424). And courts rely on it as a "remedy of last resort, justified *only* where the deterrence benefits of suppression outweigh the substantial social costs of ignoring reliable, trustworthy evidence bearing on guilt or innocence." *Id.* (internal citations and quotation marks omitted) (emphasis in original). Thus, when law enforcement officers exercise good faith, this goal of suppression is not met, and exclusion is not required. *Id.; see also United States v. Leon*, 468 U.S. 897, 922 (1984) (outlining an exception to the exclusionary rule when officers act in good faith). Contrary to Lara's argument, the good-faith exception can apply to wiretap evidence.[3] *See United States v. Malakzadeh*, 855 F.2d 1492, 1497 (11th Cir. 1988); *see also United States v. Thompson*, 936 F.2d 1249, 1252 n.2 (11th Cir. 1991).

The good-faith exception applies in all but four sets of circumstances. *Leon*, 468 U.S. at 923. Relevant to this appeal, Lara argues that the exception would not apply because the warrant was facially deficient in that the state court lacked jurisdiction. *Id.* But the warrant in this case was not facially defective. Rather,

---

[3] We are bound by prior precedent unless and until it is overruled by our court sitting *en banc* or by the Supreme Court. *United States v. Vega–Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008).

the interpretation of Georgia's wiretap statute was in flux at the time the officers obtained the warrant, and it was objectively reasonable for the officers to rely on the warrant. As discussed above, after the state courts interpreted the statute to limit the state court's jurisdiction, the statute was amended. And in 2012, the Georgia Court of Appeals interpreted these amendments to limit the jurisdiction of only the prosecutor seeking the warrant and not the state court issuing it. It was not until almost nine months after the warrants in this case ceased that the Georgia Supreme Court held that the state court's jurisdiction was limited. And, the state legislature quickly amended the statute again to clarify that a state court judge was authorized to issue a warrant for wiretaps outside the judge's circuit. Thus, we cannot conclude that officers should reasonably have known that the warrant was invalid at the time they intercepted the calls.[4]

Moreover, suppressing the evidence in this case would not meet the goal of deterring future violations. *See United States v. Herring*, 492 F.3d 1212, 1216 (11th Cir. 2007) (explaining that the minimal, if any, benefit of suppressing the evidence would not justify the substantial societal costs of excluding the evidence

---

[4] Lara contends that the government failed to offer any evidence to show that the officers were aware of the amendments or that they even looked at the warrant. But the government's lack of extrinsic evidence does not preclude a finding of good faith. *See United States v. Robinson*, 336 F.3d 1293, 1297 (11th Cir. 2003) (noting that the court may apply the good-faith exception based on facts stated in the affidavit). Although the court should look beyond the four corners of the affidavit when other evidence is presented, the government is not required to present additional facts. *Id.* Here, the government submitted lengthy affidavits to support the warrant application, and this was sufficient.

(citing *Leon*, 468 U.S. at 920-22)).  In other such incidents, the Supreme Court has relied on the good-faith exception.  *See e.g.*, *Illinois v. Krull*, 480 U.S. 340, 349-50 (1987) (applying the good-faith exception where officers were objectively reasonable in relying on a statute permitting warrantless administrative searches even though the statute was later found to be unconstitutional).

Finally, Lara's contention that the court impermissibly shifted the burden is without merit.  The district court merely commented that Lara failed to rebut the government's argument that the warrants were valid under existing precedent.

IV.

For the foregoing reasons, the district court's denial of the motion to suppress is

**AFFIRMED.**

9