S12G0895. LUANGKHOT v. THE STATE.
S12G0905. PHOMMACHANH v. THE STATE.
S12G0912. SALEUMSY v. THE STATE.
(736 SE2d 397)

HUNSTEIN, Chief Justice.

Appellants Khamone Luangkhot, Isaac Saleumsy, and Santisouk Phommachanh, along with approximately 34 others, were indicted in Gwinnett County in connection with an alleged ecstacy trafficking ring. The indictments resulted from a multi-jurisdictional investigation led by the Atlanta High Intensity Drug Trafficking Area (HIDTA) task force and conducted in collaboration with state prosecutors. As part of the investigation, the Gwinnett County District Attorney obtained a series of investigative warrants from Gwinnett County Superior Court authorizing the interception of telephone conversations from 18 different telephone lines. Prior to trial, Appellants moved to suppress the evidence investigators had obtained through these wiretaps, contending that the Gwinnett court lacked jurisdiction to issue the warrants. The motions were denied, and, on interlocutory appeal, the Court of Appeals affirmed. *Luangkhot v. State*, 313 Ga. App. 599 (722 SE2d 193) (2012). We granted certiorari to determine whether the Court of Appeals properly construed the Georgia wiretap statute, OCGA § 16-11-64, as authorizing superior courts to issue wiretap warrants that are effective outside their judicial circuits. Having reviewed the applicable law, we conclude that superior courts do not currently possess the authority to issue wiretap warrants for interceptions conducted outside the boundaries of their respective judicial circuits. Accordingly, the Gwinnett County Superior Court did not have the authority to issue the warrants in this case, and we thus must reverse.

The material facts are not in dispute. The indictments alleged that the narcotics distribution ring in which Appellants were involved was operating out of Gwinnett County. The HIDTA "wire room," the listening post from which the communications were intercepted, was located in Fulton County. As to the telephones that were monitored, the State did not attempt to prove that any of them were ever used in

Gwinnett County.[1] Thus, in sum, while the charged crimes were alleged to have been committed in Gwinnett County, the State did not show that any of the interceptions made pursuant to the wiretap warrants took place in Gwinnett County.

Based on these facts, the issue presented is whether the Gwinnett County Superior Court possessed the authority, solely by virtue of its having jurisdiction over the crimes, to authorize interceptions conducted outside its judicial circuit boundaries. Because the issue presented is a question of law involving undisputed facts, our standard of review is de novo. *Wilder v. State*, 290 Ga. 13 (2) (717 SE2d 457) (2011).

1. In the construction of statutes,

> the courts shall look diligently for the intention of the General Assembly. In so doing, the ordinary signification shall be applied to all words. Where the language of a statute is plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly. . . . In addition, when we are interpreting a statute, we must presume that the General Assembly had full knowledge of the existing state of the law and enacted the statute with reference to it. We construe statutes in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence, and their meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to other statutes and the decisions of the courts.

*Chase v. State*, 285 Ga. 693, 695-696 (2) (681 SE2d 116) (2009) (citations and punctuation omitted). We examine the text of the Georgia wiretap statute with these canons of statutory construction in mind.

The Georgia wiretap statute provides:

> Upon written application, under oath, of the prosecuting attorney having jurisdiction over prosecution of the crime under investigation, or the Attorney General, made before a judge of superior court, said court may issue an investigation warrant permitting the use of [a wiretapping] device . . . for the surveillance of such person or place to the

---

[1] In the words of the trial court, "there is no evidence that all of the phones for which wiretaps were authorized were used in Gwinnett [C]ounty."

> extent the same is consistent with and subject to the terms, conditions, and procedures provided for by Chapter 119 of Title 18 of the United States Code Annotated, as amended.

OCGA § 16-11-64 (c) (2011). The statute thus confers the power to issue wiretap warrants generally on superior court judges. Although the statute contains no express restrictions on which superior courts are empowered to issue wiretap warrants in a particular case, it does incorporate by reference the "terms, conditions, and procedures provided for by" the federal wiretap statute. Id.

This provision incorporating the federal law was added to the statute as part of Georgia's Support of the War on Terrorism Act of 2002. See Ga. L. 2002, p. 1432, § 1. In the 2002 amendments to the wiretap statute, the legislature deleted eight subparagraphs of procedural standards and replaced them with a single paragraph referring to the federal law. Compare Ga. L. 2002, p. 1432, § 3 (enacting current OCGA § 16-11-64 (b) & (c)), with Ga. L. 2000, p. 491, § 2 (former OCGA § 16-11-64 (b)). It thus appears that these amendments were intended to streamline Georgia's rules in this area and harmonize them with federal standards. Though we have long recognized that state-authorized wiretaps must comply with both federal and state statutory requirements, see *Ellis v. State*, 256 Ga. 751 (2) (353 SE2d 19) (1987); *Evans v. State*, 252 Ga. 312 (1) (314 SE2d 421) (1984), our current statute's express deference to the federal statute underscores this point. Accordingly, we look to the federal statute and case law for guidance regarding the jurisdictional question presented in this case.

2. The federal law governing the use of wiretaps resides in Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 USC §§ 2510-2522 (Chapter 119). See *Evans*, 252 Ga. at 314-315 (1). The statute allows the use of wiretaps for law enforcement purposes in accordance with detailed rules and procedures. See 18 USC § 2518 (prescribing requirements regarding form and content of wiretap warrant applications; substantive findings court must make to support issuance of warrant; contents of and expiration of court order; and maintenance and custody of recordings made pursuant to order).

Title III confers the authority to issue wiretap warrants on "a State court judge of competent jurisdiction." 18 USC § 2516 (2). This term is defined in the statute as "a judge of any court of general criminal jurisdiction of a State who is authorized by a statute of that State to enter orders authorizing interceptions of wire, oral, or electronic communications." 18 USC § 2510 (9) (b). The federal statute thus delegates to each state the determination of which of its courts are empowered to issue wiretap warrants. *Adams v. Lankford,*

788 F2d 1493, 1499 (11th Cir. 1986). Georgia's wiretap statute, as noted above, confers the power to issue wiretap warrants generally on our State's superior court judges.

Regarding the scope of the wiretap order, the federal statute provides that the order may "authoriz[e] or approv[e] interception of wire, oral, or electronic communications within the territorial jurisdiction of the court in which the judge is sitting." 18 USC § 2518 (3). Accordingly, which court may authorize a wiretap warrant in a particular case turns on the meaning of the terms "interception" and "territorial jurisdiction." See *Evans*, 252 Ga. at 316 (1) ("[t]he critical language regarding jurisdiction is 'interception . . . within the territorial jurisdiction of the court' ").

3. In *Evans*, we held that the site of the "interception" was the listening post from which the subject phone calls were overheard. *Evans*, 252 Ga. at 316 (1). We reached this conclusion based on the meaning of the term "intercept," which the federal statute defined at the time as " 'the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device.' " Id. (quoting definition of "intercept" from then-current version of 18 USC § 2510 (4)).[2] Reasoning that the only aural acquisition of the defendant's communications occurred at the listening post where the contents of the communications were first overheard, we held in *Evans* that the wiretap warrant had been properly issued from the judicial circuit in which the listening post was located. Id. at 316, 318-319 (1).

Since we issued our opinion in *Evans*, the federal definition of "intercept" has been expanded to encompass "the aural *or other* acquisition of the contents of" targeted communications. 18 USC § 2510 (4) (emphasis supplied). This broadening of the definition was part of Congress' effort to "expand the scope of [the federal statute] to extend its protections to modern forms of communication," such as "electronic pagers, electronic mail, and computer-to-computer communications." *United States v. Rodriguez*, 968 F2d 130, 136 (2d Cir. 1992). Thus, under the current version of Title III, "interceptions" of phone calls are deemed to occur not only at the listening post where the communications are overheard ("aural acquisition"), but also at the situs of the tapped phone from which the contents of the communications are being redirected ("other acquisition"). Id. at 135-136. Accord 8A Federal Procedure, Lawyers Edition, § 22:270 (Dec. 2012); *Davis v. State*, 43 A3d 1044, 1051-1052 (Md. 2012) (collecting cases

---

[2] The term "aural" is defined in Merriam-Webster's online dictionary as "of or relating to the ear or to the sense of hearing."

holding that interception occurs at site of listening post and at location of targeted phone).

4. The "territorial jurisdiction" over which a court has authority depends entirely on state law. *Adams*, 788 F2d at 1499-1500. In Georgia, "[t]he territorial jurisdiction of a judge of the superior courts is the judicial circuit in which he presides." *Granese v. State*, 232 Ga. 193, 197 (2) (206 SE2d 26) (1974) (holding, under prior version of wiretap statute, that superior court judge may issue warrant from any county within his circuit). Both the Georgia Constitution and state statutes support this principle. OCGA § 15-6-10 (superior court judge "shall discharge all the duties required of him . . . for the circuit for which he was elected or appointed"). See generally Ga. Const. Art. VI, Sec. I, Par. VI (dividing state into judicial circuits, each consisting of not less than one county); OCGA § 15-6-1 (delineating State's judicial circuits). Thus, a superior court's authority to issue warrants is generally "limited to places within that court's territorial jurisdiction." *State v. Lejeune*, 277 Ga. 749, 752 (1) (594 SE2d 637) (2004); see also OCGA § 15-6-23 (superior court judge may sign warrants and other official documents "in any county comprising a part of his circuit"). While the legislature is authorized to carve out exceptions to this rule, it must do so in express terms. OCGA § 15-6-12 (a) (judges of superior courts "may act in circuits other than their own *when authorized by law*" (emphasis supplied)).

The State contends that our wiretap statute's general language permitting "a judge of superior court . . . [to] issue an investigative warrant," OCGA § 16-11-64 (c), should be construed as making as an express grant of authority to our State's superior courts to authorize wiretaps for interceptions conducted outside their judicial circuits. However, we cannot ascribe such meaning to this statutory language in the absence of evidence, textual or otherwise, indicating the legislature's intent to grant such broad authority. If our legislature had intended to grant superior courts the authority to issue wiretap warrants effective for interceptions outside their circuits, it could have done so explicitly, as it *has* done in other areas. For example, warrants for the production of stored wire and electronic communications have been expressly afforded "state-wide application." OCGA § 16-11-66.1 (c). Notably, this latter Code section was enacted as part of the same anti-terrorism legislation that amended the wiretap statute. See Ga. L. 2002, pp. 1432, 1434, §§ 3, 4. The omission of any reference to "statewide application" in the wiretap statute, where such reference was included in a related statutory provision enacted in the same bill, militates against a broad construction of the territorial scope of wiretap warrants. See *Inagawa v. Fayette County*, 291 Ga. 715 (1) (732 SE2d 421) (2012) (where qualifying phrase found

in one statutory provision and not another, there is a presumption that the latter provision was not intended to be so qualified).[3]

Accordingly, in the absence of any state statute expressly granting superior courts the authority to issue wiretap warrants that apply outside their own judicial circuits, we hold that current state law vests the authority to issue wiretap warrants only in those superior courts of the judicial circuits in which the tapped phones or listening post are located. Applying this holding, we conclude that the Gwinnett County Superior Court lacked the authority to issue wiretap warrants for the interceptions at issue here, which, on the evidence presented, took place exclusively in Fulton County. Therefore, the warrants were invalid, and Appellants' motions to suppress should have been granted. See OCGA § 16-11-67 (evidence obtained in violation of wiretap statute is inadmissible). The judgment of the Court of Appeals must be reversed.[4]

*Judgments reversed. All the Justices concur.*

DECIDED JANUARY 7, 2013 —
RECONSIDERATION DENIED FEBRUARY 18, 2013.

*Bruce S. Harvey, Jennifer S. Hanson, K. Julie Hojnacki*, for appellant (case no. S12G0895).

*David D. Marshall*, for appellant (case no. S12G0905).

*Garland, Samuel & Loeb, John A. Garland, Donald F. Samuel*, for appellant (case no. S12G0912).

---

[3] We also reject the State's contention that wiretap warrants should have a broader territorial reach, because Georgia's wiretap statute has evolved from focusing on the jurisdiction "wherein the [listening] device is to be physically placed," see Ga. L. 1972, p. 615, § 1, to the jurisdiction in which the crimes are being prosecuted, see OCGA § 16-11-64 (c). Though the State is correct that the statute previously made reference to placement of the listening device, we fail to discern how this change, by itself, affects the determination of where the "interception" is deemed to occur for jurisdictional purposes.

[4] Because our wiretap statute gives the authority to seek wiretap warrants only to the Attorney General or the "prosecuting attorney having jurisdiction over prosecution of the crime," the question arises whether the district attorney from the judicial circuit where the crime is being investigated has the authority to make a wiretap application to a court outside his circuit. For example, in this case, could the Gwinnett County District Attorney have sought a wiretap warrant in Fulton County Superior Court? The answer is unclear; as we have noted, "no extant statute or constitutional provision purports to deal with the scope of a district attorney's authority." *Wiggins v. Lemley*, 256 Ga. 152, 154 (1) (345 SE2d 584) (1986). See also, e.g., Ga. Const., Art. VI, Sec. VIII, Par. I (creating office of district attorney for each judicial circuit and prescribing duties in broad fashion); OCGA § 15-18-6 (enumerating district attorneys' duties "within their respective circuits" and providing for "such other duties as are or may be required by law or which necessarily appertain to their office"). Though we need not resolve this issue here, we note that our holding in this case makes this issue salient.

*Daniel J. Porter, District Attorney, Rodney K. Miles, Assistant District Attorney*, for appellee.