**WHOLE COURT**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**July 16, 2014**

# In the Court of Appeals of Georgia

A14A0635. PESTANA v. THE STATE.                    DO-023 C

DOYLE, Presiding Judge.

In November 2009, James Andrews Pestana entered a negotiated plea of guilty to aggravated assault[1] and was sentenced under the First Offender Act[2] to confinement for a period of ten years, which sentence could be served on probation. In July 2013, the superior court signed an order of discharge after Pestana's probation officer filed a petition for discharge indicating that Pestana had fulfilled the terms of his probation. The court subsequently rescinded the discharge order and reinstated Pestana's original sentence, and Pestana appeals that ruling. Because the superior

---

[1] OCGA § 16-5-21 (b) (2).

[2] OCGA § 42-8-60 (a) (2).

court has plenary power to correct its own mistaken ruling during the same term of court, we affirm.

The record shows that Pestana was charged with two counts of aggravated assault with a deadly weapon, a handgun, arising from a single incident between Pestana and two alleged victims, Gary Berrong and Scott Albach.[3] The incident was part of an escalating neighborhood dispute allegedly involving roving ducks, a "mooning" incident, and land disturbance causing water on a roadway. Pestana had become estranged with certain neighbors, and in June 2009, after several confrontations, Berrong and Albach stopped their truck in the roadway and began taking photographs of Pestana for a pending lawsuit while he mowed his grass approximately 50 feet away. Pestana, who almost always carried a firearm,[4] pulled a handgun out of his pocket, pointed it at the men, and "told them they needed to keep going." Berrong and Albach immediately complied.

Based on this incident, Pestana was arrested and charged with two counts of aggravated assault. In November 2009, Pestana entered a negotiated plea of guilty to

---

[3] Much of the factual background is taken from a transcript of a civil proceeding that was made part of the record in this case. We rely on it primarily for context, as it does not directly bear on the legal issues presented on appeal.

[4] Pestana had a valid firearm permit.

2

count one (assaulting Berrong with a handgun), and the State agreed to nolle prosequi count two (assaulting Albach with a handgun). In accordance with the plea deal, Pestana was "sentenced to confinement for a period [of] . . . [ten] years," noting that the sentence could be served on probation.[5] The terms of his probation included conditions that he not possess any firearms nor have direct or indirect contact with Berrong, Albach, or their families.

On July 3, 2013, a probation officer filed a petition for discharge noting that Pestana was placed on probation for ten years in November 2009, but also stating that he was eligible for discharge "by having fulfilled the terms of said probation." The district attorney's office was not notified of the petition for discharge, nor were the victims, so they did not participate in the discharge process. On July 10, 2013, the superior court signed an order of discharge, which order was entered on July 18, 2013.

---

[5] Under the first offender statute, OCGA § 42-8-60 (a), a trial court may, "in the case of a defendant who has not been previously convicted of a felony, . . . without entering a judgment of guilt and with the consent of the defendant: (1) [d]efer further proceeding and place the defendant on probation as provided by law; or (2) [s]entence the defendant to a term of confinement as provided by law." Based upon the sentencing sheet and the plea colloquy, it is apparent that the trial court sentenced Pestana to a term of ten years, albeit to be served on probation, pursuant to OCGA § 42-8-60 (a) (2).

Upon learning of the discharge, the State filed on September 5, 2013, a motion for reconsideration stating its lack of notice and the failure to notify any victims in accordance with OCGA § 17-17-1 et seq. The superior court held a hearing at which the State, Pestana, Berrong, and Albach were present. At the hearing, the State explained that the original petition for discharge was apparently mistakenly generated due to a probation office data entry error that created a 2003 conviction date rather than the correct 2009 conviction date. The State did not introduce evidence to this effect, but Pestana's counsel also stated at the hearing that "[o]bviously there must have been a miscalculation to put his conviction date down wrong." Under that erroneous scenario, in 2013, the ten-year sentence would have ended, and Pestana would have been eligible for discharge as successfully completing his probation term. The discharge petition perpetuated this data entry error by accurately stating the ten-year sentence but incorrectly stating that Pestana had "fulfilled the terms of said probation" in 2013 – after less than four years. Thus, the discharge petition was not couched in terms of *early release* prior to the end of the probation period, but instead it was phrased to reflect *fulfillment* of the term of probation. Despite the apparent error, the discharge petition was generated and submitted to the superior court.

The State also explained that the district attorney's office had not been notified of the discharge petition, and therefore, neither had any of the victims. The State argued that had it been notified, it would have been able to comply with the notification provisions of the Victims' Bill of Rights under OCGA § 17-17-1 et seq. Albach testified at the hearing that he was afraid of Pestana, whom he characterized as "unstable" and well-armed.[6] After hearing the evidence and argument, the superior court granted the State's motion and reinstated Pestana's sentence,[7] leaving open the option that it could entertain another discharge petition in the future. Pestana now appeals the reinstatement of his sentence.

1. Pestana first argues that the superior court erred because the State's motion for reconsideration, filed 49 days after the court's discharge order was entered, was untimely. Because of the unusual procedural posture of the case, Pestana points to no specific statutory provision explicitly requiring the State's motion to be filed within a certain date, instead arguing that the motion was akin to a motion for new trial or

---

[6] Albach also referred to Pestana's heavy use of prescription drugs as a basis for his fear. At an earlier civil hearing, Pestana had explained that he regularly used oxycodone and hydrocodone for chronic pain due to an injury, as well as antidepressants; all of which, Pestana testified, impair his judgment.

[7] The order stated that Pestana was permitted to serve the remainder of his sentence on probation.

an appeal, both of which must be filed within 30 days.[8] But it appears from the record that the State did not have notice of the discharge order before 30 days would have elapsed. Under these unique factual circumstances, the State sought to invoke the superior court's authority over its orders and judgments issued within the same term of court.[9] The superior court explicitly proceeded under this authority in its reinstatement order; therefore, under these facts, the motion was functionally like a motion in arrest of judgment, which "must be made during the term at which the judgment was obtained."[10] Also, the motion arose out of a defect appearing on the face of the discharge petition and order.[11] Therefore, the State's failure to take action

---

[8] See OCGA §§ 5-5-40 (a) (motion for new trial); 5-6-38 (a) (notice of appeal).

[9] See, e.g., *Buice v. State*, 272 Ga. 323, 325-326 (528 SE2d 788) (2000).

[10] OCGA § 17-9-61 (b). See generally OCGA § 17-9-61 (a) ("When a judgment has been rendered, either party may move in arrest thereof for any defect not amendable which appears on the face of the record or pleadings.").

[11] See OCGA § 17-9-61 (a).

within thirty days of the discharge order was not fatal to its motion filed in the same term[12] upon becoming aware of the discharge.[13]

2. Pestana next argues that any failure to notify the victims or allow them to participate in the proceedings did not require reinstatement of his sentence. It is true that, as Pestana points out, the victim notification provisions at OCGA § 17-17-1 et seq. are typically required "wherever practicable,"[14] "whenever possible,"[15] or "to the extent possible,"[16] so lack of notification does not *necessarily* reflect an error *requiring* correction by the trial court. The State's appellate brief likewise focuses on the importance of such notice, which serves the laudable policy of allowing crime

---

[12] The terms of court for Towns County Superior Court, which is in the Enotah Circuit, are January 1 and July 1. See OCGA § 15-6-3 (17.1) (A). In this case, the superior court entered the order of discharge on July 10, 2013, and the State filed its motion for reconsideration on September 5, 2013, within the same term of court.

[13] Cf. *Pope v. Pope*, 277 Ga. 333, 335 (588 SE2d 736) (2003) (applying *Buice* and holding that "considering all the circumstances, including the lack of notice to [the respondent] of the final hearing, . . . the trial court did not err in exercising its inherent power to set aside the [final] judgment").

[14] OCGA § 17-17-5 (a).

[15] OCGA § 17-17-7 (a).

[16] OCGA § 17-17-8 (b).

victims to be aware of the proceedings involving the accused.[17] But pretermitting the legal import of the victims' notification in the discharge process,[18] the discharge in this case was based on a patent error in the discharge petition – that Pestana's ten-year sentence was complete.

> Courts of record retain full control over orders and judgments during the term at which they were made, and, in the exercise of a sound discretion, may revise or vacate them. . . During the term of court at which a judgment is rendered[,] the [trial] court has power, on its own motion, to vacate the same for irregularity, or because it was improvidently or inadvertently entered. *The plenary control of the court over orders and judgments during the term at which they were rendered extends to all orders and judgments save those which are founded upon verdicts.* The power of the court, during the term, is described as plenary, to be used for the purpose of promoting justice, but the court's discretion, although broad, is not unbounded and should be exercised only upon sufficient cause shown. Hence, [courts] have recognized that this inherent power should not be used unless some meritorious reason is given therefor. However, the right to determine what is a meritorious reason is also addressed to the sound discretion of the [trial] judge, and

---

[17] See OCGA § 17-17-1.

[18] See OCGA § 17-17-15 (c) (The Crime Victims' Bill of Rights "does not confer upon a victim any standing to participate as a party in a criminal proceeding or to contest the disposition of any charge.").

this [C]ourt will not reverse his or her decision unless such discretion is manifestly abused.[19]

Here, the superior court revisited a discharge order which, on its face, contained an internal inconsistency based on what the court later learned was an inadvertent data entry error in the probation office. As a result, the discharge order incorrectly stated Pestana had "fulfilled the terms" of his ten-year sentence less than four years into it. This is precisely the type of error that a trial court should have discretion to correct.

Further, the discharge order was not a final judgment founded on a jury verdict such that it violated double jeopardy principles or was unreviewable by the trial court absent a timely motion for new trial.[20] The discharge order was part of the procedure effectuating the first offender disposition of Pestana's case, and Pestana's sentence remained unaltered from that which was lawfully entered pursuant to his guilty plea.

---

[19] (Punctuation and citations omitted; emphasis supplied.) *Buice*, 272 Ga. at 324-325, citing *Jones v. Heilig Meyers*, 223 Ga. App. 277, 278 (477 SE2d 411) (1996), *Pledger v. State*, 193 Ga. App. 588, 589 (2) (a) (388 SE2d 425) (1989), *Giddeons v. State*, 156 Ga. App. 800, 801 (275 SE2d 370) (1980).

[20] See generally *Hipp v. State*, 293 Ga. 415, 416 (746 SE2d 95) (2013) (The "'plenary control of the court over orders and judgments during the term at which they were rendered extends to all orders and judgments save those which are founded upon verdicts.'"), quoting *Buice*, 272 Ga. at 325.

Nor did the court change Pestana's eligibility for first offender treatment accorded by his original plea and sentence.

The fact that the case was essentially closed after the discharge does not affect the superior court's authority to revisit it under the facts presented. For example, in *Buice v. State*,[21] the Supreme Court addressed a trial court's authority to vacate a nolle prosequi order that it had previously entered.[22] As the Court explained, a "[n]olle prosequi is the State's formal action on its decision not to further prosecute an indictment. It is well established that entry of a nolle prosequi terminates the prosecution pending on that indictment and that the State cannot try a defendant on a charge that has been nol prossed."[23] Thus, after the entry of a nolle prosequi order, that case is no longer pending before the trial court, and the defendant is free from prosecution on that indictment. Even so, the Supreme Court explained that the trial court had inherent authority to vacate its own nolle prosequi order within the same term of court (based on new evidence the trial court was not aware of when it entered

---

[21] 272 Ga. 323 (528 SE2d 788) (2000).

[22] See id. at 323-326.

[23] Id. at 324.

10

the nolle prosequi) and effectively reinstate the original indictment.[24] The Court's rationale was not a narrow one limited to nolle prosequi orders, but instead broadly based on "well-established Georgia law regarding the plenary control courts of record retain to revise or vacate orders and judgments during the term at which they were entered."[25]

For the foregoing reasons, we conclude that the trial court did not err by rescinding the discharge order and reinstating Pestana's original sentence.

*Judgment affirmed. Andrews, P. J., Ellington, P. J., Dillard and McMillian, JJ., concur. Phipps, C. J. and Miller, J., dissent.*

---

[24] See id. at 326.

[25] Id. at 326.

A14A0635. PESTANA v. THE STATE.

MILLER, Judge, dissenting.

I respectfully dissent to the majority's opinion because a trial court that has lawfully discharged a defendant from a sentence under the First Offender Act, resulting in that defendant's complete exoneration, cannot subsequently reinstate the defendant's probation. Although a trial judge has plenary power over its orders and judgments during the term of court in which they are entered,[1] when there is no error, there is nothing to correct and a trial judge does not have authority to reinstate a defendant's First Offender sentence, regardless of the term of court. Upon a trial

_____

[1] *Hipp v. State*, 293 Ga. 415, 416 (746 SE2d 95) (2013).

judge's review and exercise of his discretion to discharge a First Offender, the trial court no longer has any jurisdiction in the matter. The defendant's constitutional rights have been restored and the defendant no longer has a criminal record. If this were not the case, the defendant could be placed in double jeopardy, i.e., punished twice for the same crime, even though he did everything he was supposed to do under the terms of the First Offender Act and has relied on the trial court's order discharging him.

The Supreme Court of Georgia has held that "[t]he underlying humanitarian purpose of the first offender statutes is to protect the first offender from the stigma of having a criminal record[.]" (Citations and punctuation omitted.) *Davis v. State*, 269 Ga. 276, 277 (2) (496 SE2d 699) (1998). This purpose cannot be overstated. The First Offender Act gives defendants a one-time opportunity for rehabilitation, and an opportunity to be gainfully employed after a criminal infraction with no record where the trial court determines that the defendant is worthy of such an opportunity. A probated sentence entered under this Act is preliminary only. Consequently, unlike other probated sentences, a defendant on First Offender probation "is not merely serving his sentence outside the confines of prison, but is serving a period on probation to determine whether or not [he] may be rehabilitated." *State v. Wiley*, 233

2

Ga. 316, 318 (210 SE2d 790) (1974). Where the defendant successfully fulfills the terms of his probation or is released by the trial court prior to the termination of the probationary period, the defendant's felony criminal slate is wiped clean and his civil rights and liberties are unaffected. See OCGA § 42-8-62 (a).

The First Offender Act pertinently provides:

Upon fulfillment of the terms of probation, *upon release by the court prior to the termination of the period thereof*, or upon release from confinement, the defendant shall be discharged without court adjudication of guilt. . . . the *discharge shall completely exonerate the defendant of any criminal purpose* . . . and the defendant shall not be considered to have a criminal conviction.

(Emphasis supplied.) OCGA § 42-8-62 (a). "Where [as here] the language of a statute is plain and susceptible to only one natural and reasonable construction, [we] must construe the statute accordingly." *Luangkhot v. State*, 292 Ga. 423, 424 (1) (736 SE2d 397) (2013).

"[T]he plain language of [OCGA § 42-8-62 (a)] provides that, with certain exceptions [not applicable here], once a first offender has been discharged without an adjudication of guilt, he or she stands completely exonerated and shall not be considered as having been convicted of a crime." (Footnote omitted.) *Jackson v.*

3

*State*, 299 Ga. App. 356, 358 (1) (683 SE2d 60) (2009). Based on the plain language of OCGA § 42-8-62 (a), once Pestana was discharged, he was completely exonerated. Consequently, regardless of the term of court, at this point the case was no longer pending before the trial court, and the trial court lacked authority to reconsider its ruling or enter any order in Pestana's case.

In so holding, I reject the State's argument and the majority's opinion that the trial court retained jurisdiction because the petition for discharge was based on an inadvertent data error entered into a probation supervisor's computer. At the hearing on the motion for reconsideration, the State argued that: "the information that the individual who remains unknown entered into the computer for probation supervision purposes, indicated that [Pestana's] conviction date was a conviction date of 2003[.]" The State did not support its argument with any documents, testimony or other factual evidence. Moreover, defense counsel specifically emphasized the lack of any supporting evidence by stating at the hearing that *nothing* presented to the trial court shows that there was a misrepresentation or clerical error.

Contrary to the majority's contention, Pestana's discharge under the First Offender Act was lawful and not based on a patent error, or any error, in the discharge petition. Both the petition for discharge and the trial court's order of discharge clearly

4

state on their face that Pestana was placed on probation on November 16, 2009 for a period of ten years. Moreover, the fact that the discharge petition was not expressly couched in terms of an early release, does not mean that the probation officer mistakenly believed that Pestana had fulfill the entire term of his probation. Rather the probation officer's language that Pestana fulfilled the terms of his probation merely reflects that he successfully complied with his probation conditions, which is ordinarily a prerequisite for obtaining an early discharge.

Here, the trial court conducted its own review of Pestana's criminal record before entering the order discharging Pestana without an adjudication of guilt. In discharging Pestana, the trial court was well aware that he had served less than four years on probation, and the First Offender Act specifically authorizes early discharge when a defendant, such as Pestana, has complied with the terms of his probation. See OCGA § 42-8-62 (a). Since there was no error in the discharge petition, there was nothing for the trial court to correct within the term of court.

Pestana was given First Offender treatment, and his subsequent discharge shows that the First Offender Act served its purpose in this case. While I agree that notification of the victims prior to the early discharge of a First Offender's probation is the best practice, neither the terms of Pestana's First Offender probation, nor the

First Offender Act required it. Pestana's lawful early discharge in accordance with the First Offender Act restored his constitutional rights and completely exonerated him, so that going forward he would have no criminal record.

To decide this case as the majority suggests means that defendants, who have have been discharged under the First Offender Act, can no longer rely on their discharge order. Accordingly, I would reverse the trial court's order reinstating Pestana's probation. I am authorized to state that Chief Judge Phipps joins in this dissent.