**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 19, 2015**

# In the Court of Appeals of Georgia

A14A1822. ESTRADA-NAVA v. THE STATE.

A14A1958. PADILLA-CHAVEZ v. THE STATE.

A14A2004. DURON v. THE STATE.

MILLER, Judge.

Following a joint jury trial, Juan Manuel Estrada-Nava, Fernando Padilla-Chavez, and Carlos Humberto Duron (collectively, the "Defendants") were convicted of trafficking in cocaine (OCGA § 16-13-31 (a) (2009)). The Defendants appeal from the denial of their motions for new trial, contending that the trial court erred in admitting evidence obtained from an illegal wiretap; the evidence was insufficient to support their convictions; and the evidence was insufficient to prove venue. Discerning no error, we affirm their convictions.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys

a presumption of innocence. We do not weigh the evidence or resolve issues of witness credibility, but merely determine whether the evidence was sufficient to find the defendant guilty beyond a reasonable doubt.

(Citation omitted.) *Liger v. State*, 318 Ga. App. 373, 373-374 (734 SE2d 80) (2012).

So viewed, the evidence shows that as part of a long-term investigation, the Atlanta High Intensity Drug Trafficking Area Task Force (the "HIDTA Task Force") received authorization to wiretap Duron's cellphone. In 2009, based on the intercepted phone calls, HIDTA task force officers believed that Duron was brokering a sale of ten kilograms of cocaine to take place on August 13. From the information gathered from the wiretap of Duron's phone, police officers expected that the purchasers of the drugs would provide the sellers with a green Dodge Dakota equipped with hidden compartments that the sellers would load with drugs and return to the purchasers. The transaction would take place at a QuikTrip gas station located off Indian Trail Road in Gwinnett County.

HIDTA Task Force officers set up surveillance at the gas station on the afternoon of August 13. Police officers observed Estrada-Nava arrive at the gas station in a green Dodge Dakota. Shortly thereafter, a black Ford F-150 arrived. Javier Zarate-Calleja exited the F-150 and went inside the store. Estrada-Nava also went inside the store. When Zarate-Calleja exited the store, he directed Victor Ortega

Valdovinos, who had arrived in a red Chevrolet Tahoe, to park in between the Dakota and the F-150. Valdovinos then exited the Tahoe and got into the Dakota. At this time, Estrada-Nava exited the store. Estrada-Nava got into the Dakota and remained there for a few minutes before getting into the Tahoe.

Valdovinos then drove the Dakota to the seller's stash house in Lilburn. While the Dakota was at the stash house, the seller called Duron because the individuals at the house needed help opening the vehicle's two hidden compartments. The seller also told Duron that they did not want the buyers to put the money in the Dakota's hidden compartments because these compartments were difficult to open. The seller then advised Duron that the Dakota would be driven to La Cazuela, a restaurant located on Indian Trail Road about a mile from the gas station, and the buyers could retrieve the Dakota at the restaurant.

Soon thereafter, Duron called Zarate-Calleja and directed him to go to La Cazuela because the Dakota was about the leave the stash house. At that point, Estrada-Nava left the gas station in the Tahoe and drove to La Cazuela. Shortly thereafter, Zarate-Calleja and a driver arrived at the restaurant in the F-150. Estrada-Nava then exited the Tahoe and entered the restaurant. When Valdovinos arrived at the restaurant, Estrada-Nava exited the restaurant and he exchanged vehicles with

3

Valdovinos. Estrada-Nava left La Cazuela, Zarate-Calleja followed in the F-150, and Valdovinos left in the Tahoe, headed in a different direction.

Estrada-Nava and Zarate-Calleja subsequently met at a Norcross residence. Zarate-Calleja called Duron to notify Duron that he was going to test the quality and quantity of the cocaine. A short time later, Zarate-Calleja left the Norcross residence, riding as a passenger in the F-150. Zarate-Calleja called Duron and advised that he thought he was being followed by law enforcement officers. Zarate-Calleja also informed Duron that he had one kilogram of cocaine with him, while the rest of the cocaine was in another vehicle. Zarate-Calleja stopped at a strip mall, and he and Duron discussed either hiding the kilogram of cocaine or having someone meet Zarate-Calleja to take it. During this time, police officers observed Zarate-Calleja walk in and out of several businesses and go in and out of the vehicle.

When the F-150 began to leave, officers moved in, blocked the vehicle, and arrested the driver. Zarate-Calleja was not in the vehicle, but officers found him a short distance away and arrested him. Police officers searched the F-150 and found items consistent with testing narcotics, such as a digital scale, a cutting board, a glass jar, and a razor knife. The scale tested positive for the presence of cocaine. Police officers then searched the area for the kilogram of cocaine, and found it in a QuikTrip

4

bag, along with items that Zarate-Calleja had previously bought at the QuikTrip gas station.

At the same time that Zarate-Calleja left the Norcross residence, Padilla-Chavez drove away in the Dakota. State Troopers were summoned to the area to conduct a stop, but they were unable to arrive in time. About thirty minutes later, a State Trooper stopped the vehicle and conducted a search with the assistance of other police officers. They found the hidden compartments and, while they did not find any cocaine in the vehicle, a drug dog alerted to the residual odor of cocaine.

Police officers subsequently obtained a warrant to search the Norcross residence, where they encountered and arrested Estrada-Nava, but did not find any drugs or money. Police officers also obtained and executed a search warrant on the Lilburn stash house, where they arrested Valdovinos and recovered $559,679 in cash, the Tahoe, 103 kilograms of cocaine, packaging material, plastic wrap, a money counter, and a small amount of crack cocaine.

Some of the cocaine recovered from the Lilburn stash house had packaging markings identical to markings found on the kilogram of cocaine recovered at the strip mall where Zarate-Calleja was arrested. The one kilogram of cocaine recovered

at the strip mall had a purity of 73.8 percent. A composite sample taken from the cocaine recovered from the stash house had a purity of 73.5 percent.

1. On appeal, all three Defendants contend that the trial court erred in admitting evidence obtained from the wiretap because the superior court's order granting the wiretap warrant authorized the warrant to be executed outside of its judicial circuit, in contravention of *Luangkhot v. State*, 292 Ga. 423 (736 SE2d 397) (2013). *Luangkhot* held that "in the absence of any state statute expressly granting superior courts the authority to issue wiretap warrants that apply outside their own judicial circuits, . . . current state law vests the authority to issue wiretap warrants only in those superior courts of the judicial circuits in which the tapped phones or listening post are located." Id. at 428 (4).[1]

In this case, some of the Defendants filed motions to suppress arguing that the wiretap authorizations had expired, the intercepted calls exceeded those allowed by any warrant, and the intercepted calls were not properly minimized. None of the Defendants, however, filed motions to suppress on the grounds that the wiretap

---

[1] Following the Supreme Court's decision in *Luangkhot*, the General Assembly amended the wiretap statute, OCGA § 16-11-64, to give superior courts the authority to issue warrants that have state-wide application and permit the interception of phone calls from any location in the state. See OCGA § 16-11-64 (c) (effective February 13, 2013).

6

evidence should be suppressed because the superior court lacked authority to issue a wiretap warrant that was executed outside its judicial circuit.

Under OCGA § 17-5-30 (b), a motion to suppress must "be in writing and state facts showing that the search and seizure were unlawful."

> Compliance with OCGA § 17-5-30 (b) is required because evidence exclusion is an extreme sanction and one not favored in the law. . . . [O]n a motion to suppress, the State is entitled to proper notice of the issue raised or it will be deemed waived. In other words, the suppression motion must be sufficient to put the State on notice as to the type of search or seizure involved, which witness to bring to the hearing on the motion, and the legal issues to be resolved at that hearing.

(Citations and punctuation omitted.) *Young v. State*, 282 Ga. 735, 736 (653 SE2d 725) (2007). Since the Defendants did not file a motion to suppress arguing that the superior court lacked authority to issue the wiretap warrants in this case, they waived this entire issue. See *Deleon-Alvarez v. State*, 324 Ga. App. 694, 699 (2) (a) (751 SE2d 497) (2013) (defendant waived challenge to wiretap evidence based on *Luangkhot* because he did not seek suppression before the trial court) ; see also *Smith v. State*, 205 Ga. App. 848, 848-849 (2) (424 SE2d 60) (1992) (enumeration of error challenging the validity of a warrant was waived where motion to suppress did not raise ground alleged in enumeration). Therefore, since the Defendants waived the

issue, they have presented nothing for us to review, and we uphold the denial of their motions to suppress.

2. The Defendants also contend that the evidence was insufficient to sustain their convictions for trafficking. We disagree.

Former OCGA § 16-13-31 (a) (1) provided that any person "who is knowingly in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine" commits the felony offense of trafficking in cocaine. OCGA § 16-13-31 (2009). To convict the Defendants of cocaine trafficking, the State was required to prove: (1) that the defendants possessed a substance; (2) that the substance was cocaine or a mixture with a purity of 10 percent or more of cocaine; (3) that the quantity of the substance was 28 grams or more; and (4) that the defendants did so knowingly. See *Scott v. State*, 295 Ga. 39, 40 (1) (757 SE2d 106) (2014) (the State has to prove defendant's knowledge of the nature and amount of the drug and of being in possession of it); *Harrison v. State*, 309 Ga. App. 454, 456 (2) (711 SE2d 35 (2011).

With respect to the possession required for a trafficking conviction, a defendant does not need to be holding the contraband in his hand or have it physically on his person; joint constructive possession of a contraband is also sufficient. *Valdez v.*

8

*State*, 310 Ga. App. 274, 276 (1) (712 SE2d 656) (2011). Additionally, a person who knowingly has both the power and the intention at a given time to exercise dominion or control over a thing is in constructive possession of it. See *White v. State*, 313 Ga. App. 605, 606 (1) (722 SE2d 198) (2012). Furthermore, even if a defendant does not directly commit the trafficking offense, he is a party to the crime if he intentionally aids or abets another in its commission. See OCGA § 16-2-20 (b) (3); *Valdez*, supra, 310 Ga. App. at 276 (1). Here, the evidence set forth above was sufficient to convict the Defendants of drug trafficking.

(a) *Duron*

Notably, the evidence showed that Duron arranged a drug sale involving ten kilograms of cocaine; monitored and directed the transfer of vehicles, and monitored the testing of the cocaine once received. Additionally, when Zarate-Calleja discovered that he was being followed by police, Duron conducted counter-surveillance against the police and attempted to help Zarate-Calleja get rid of a kilogram of the cocaine. Accordingly, the evidence was sufficient to convict Duron.

(b) *Estrada-Nava*

Estrada-Nava drove the vehicle described in the wiretap intercept – the Dodge Dakota – to the QuikTrip gas station, and Estrada-Nava exchanged vehicles there. See

9

*Aguilera v. State*, 320 Ga. App. 707, 709, n.5 (740 SE2d 644) (2013) (vehicle swapping is a common method used by drug traffickers to facilitate the clandestine exchange of drugs and money). Shortly after Duron informed Zarate-Calleja that the Dakota needed to be retrieved at La Cazuela because it was leaving the stash house, Estrada-Nava left the gas station and drove to the restaurant. Once Estrada-Nava retrieved the Dakota, he drove it to the Norcross house where the drugs were tested by Zarate-Calleja, who presumably discarded a kilogram of cocaine after attempting to elude police. From this evidence, the jury was authorized to conclude that Estrada-Nava committed the offense of cocaine trafficking.

(c) *Padilla-Chavez*

The evidence was also sufficient to support Padilla-Chavez's conviction. In particular, the evidence showed that Padilla-Chavez left the Norcross residence in the Dakota at the same time as Zarate-Calleja, who had tested the cocaine and departed the residence with one kilogram of cocaine. When police officers stopped Padilla-Chavez in the Dodge Dakota about 30 minutes later, he initially gave a false name. Although no drugs were found in the Dakota, an intercepted phone call between Duron and Zarate-Calleja prior to Zarate-Calleja's arrest indicated that the nine kilograms of cocaine had been successfully delivered using the Dakota. From this

10

evidence, the jury was authorized to conclude that Padilla-Chavez was involved in transporting the nine kilograms of cocaine prior to being stopped by police officers. See *Valdez*, supra, 310 Ga. App. at 276-277 (1) ("presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred").

3. The Defendants also contend that the State failed to prove venue. We disagree.

> Venue is an essential element that must be proved beyond a reasonable doubt. As with all other essential elements of a crime, weighing the evidence of venue is a function of the jury, not of this Court. . . . Whether the evidence as to venue satisfied the reasonable-doubt standard is a question for the jury, and its decision will not be set aside if there is any evidence to support it.

(Citations and punctuation omitted.) *Liger*, supra, 318 Ga. App. at 374 (1).

In this case, a police officer testified about the surveillance conducted by the HIDTA Task Force at the QuikTrip gas station, the Lilburn stash house, the restaurant, and the strip mall where Zarate-Calleja discarded the one kilogram of cocaine. The officer expressly testified that each of these surveillance locations were located within the confines of Gwinnett County. Morever, the evidence showed that when the Dodge Dakota left the restaurant with ten kilograms of cocaine, it traveled

11

through Gwinnett County. Based on this evidence, the jury was authorized to conclude that the trafficking offense was committed in Gwinnett County. See *Ruiz v. State*, 277 Ga. App. 178, 179 (2) (626 SE2d 136) (2006) (evidence was sufficient to prove venue in trafficking case where defendant agreed to deliver five kilograms of cocaine to a Clayton County location and the defendant arrived at the location with cocaine in his vehicle).

*Judgments affirmed. Doyle, P. J., and Dillard, J., concur*.